HURST et al., Appellants, v. VON DE VELD et al.

Division One, November 12, 1900.

1. **Will:** EVIDENCE AS TO TESTATOR'S MEANING. The meaning of words used in a will must be gathered from the will itself, and not from what testator after making it may have said he intended or understood it to express, and, hence, all evidence as to what he said he meant should be excluded.

2. ———: ———: DOUBTFUL MEANING: FEELINGS. If the meaning of words used by a testator in his legacy to a child is in doubt, the state of his feelings towards such child is a legitimate fact to be considered in solving the doubt, as it assists the court or jury in seeing the case as the testator saw it.

Hurst v. Von De Veld.

3. ———: INTENTION TO DISINHERIT. Although the intention of a testator to disinherit his heir be clearly expressed, yet unless the will makes other disposition of his property, it goes to the heir, not by force of the will, but by force of the law of descents and distributions. So that, if the will leaves a part of the property, real or personal, undisposed of, though the intention of the testator was to exclude a certain child from any share therein, yet by the laws of inheritance such child takes its statutory share of such residue. But if the will disposes of all the property, such child takes what the will gives him and no more.

4. ———: ———: WILL THAT DISPOSES OF ENTIRE ESTATE. The will in this case, when the descriptions of the property devised and bequeathed are considered by themselves, seems to leave one-half the real estate and three-tenths of the personalty undisposed of, and says one daughter is to have "the sum of fifty dollars of my estate and no more," but it gives to another daughter 80 acres of land and "one-fifth of my personal estate when divided," to three grandchildren "the interest of their father in my estate," to three other grandchildren "the interest their deceased mother would have in law in trust," and in another clause says that "in speaking in this will of the interests which" said last daughter and grandchildren "would have in my estate, I mean their interest which they would inherit by law after taking out the specific bequests and devises made by me in this will to others named therein." *Held*, that, when the entire wording of the will is considered, the testator meant to dispose of his entire estate to the persons named in the will, and that by the clause giving $50 to the daughter named he meant that, at the final disposition of his estate, such amount was to be the share of that daughter, and that by so much as her share was reduced thereby, by that much was the share of the others increased.

Appeal from Cass Circuit Court.—*Hon. W. W. Wood*, Judge.

REVERSED AND REMANDED (*with directions*).

*James T. Burney* and *R. T. Railey* for appellants.

(1) The court below committed error in holding that only five-tenths of testator's real estate and seven-tenths of his personal property was disposed of by the will in controversy. Unless the contrary clearly appears upon the face

of the will—which is not true in the case at bar—the presumption of law is, that testator intended to dispose of all his property by the will in question. Watson v. Watson, 110 Mo. 170; Farish v. Cook, 78 Mo. 220; Whitcomb v. Rodman, 47 A. St. Rep. 181; Schouler on Wills, p. 490; Given v. Hilton, 5 Otto 591. (2) If there is doubt, in the mind of the chancellor, as to whether testator intended to dispose of all his property, it is competent to introduce extrinsic evidence, for the purpose of placing the court in the same position as that occupied by testator, so that the instrument can be construed from the same standpoint of view occupied by him. Rothwell v. Jamison, 147 Mo. 613; McMillan v. Farrow, 141 Mo. 62; Garth v. Garth, 139 Mo. 462; Murphy v. Carlin, 113 Mo. 117; Watson v. Watson, 110 Mo. 170; Small v. Field, 102 Mo. 122; Wolfe v. Dyer, 95 Mo. 551; Hall v. Stephens, 65 Mo. 677. (3) While extrinsic evidence can not be admitted for the purpose of adding to, subtracting from, or varying, the express terms of the will, yet such evidence, including declarations of testator, are competent for the purpose of showing the state of his affection toward those for whom he was attempting to provide, as well as his environments and surroundings at the time. Walton v. Kendrick, 122 Mo. 518; Murphy v. Carlin, 113 Mo. 117; Thompson v. Ish, 99 Mo. 170; Rule v. Maupin, 84 Mo. 587.

*N. B. Carskadon* and *Noah M. Givan* for respondents.

(1) The leading rule in the interpretation of a will is that the intention of the testator, as expressed in it, shall control. Schorr v. Carter, 120 Mo. 413; Small v. Field, 102 Mo. 104; Nichols v. Boswell, 103 Mo. 152; Watson v. Watson, 110 Mo. 164; Murphy v. Carlin, 113 Mo. 112; Redman v. Barger, 118 Mo. 568; Owen v. Eaton, 56 Mo. App. 563; Cross v. Hoch, 149 Mo. 336; Shumate v. Bailey, 110 Mo.

411; Rinquist v. Young, 112 Mo. 26. (2) In getting at the intent it is not permissible to introduce outside testimony of declarations. Parol testimony as to declarations of a testator can not be given in evidence to control the language of a will, or give to it a different effect than that which it plainly imports. Mersman v. Mersman, 136 Mo. 256; Bradley v. Bradley, 24 Mo. 314; Gregory v. Cowgill, 19 Mo. 415; Thomas v. Black, 113 Mo. 69; Bingle v. Voltz, 142 Ill. 214; Derfreese v. Lake, 109 Mich. 415. (3) While intention of the testator is the cardinal rule in the construction of wills, yet such intention must be ascertained from the language used in the will; it is not necessarily that which existed in the mind of the testator, but that which he has expressed by the language of the will; and, while the surrounding circumstances may be resorted to, to enable the court to interpret the language used in the will from the standpoint of the testator, still, surrounding circumstances can not be resorted to for the purpose of importing into the will any intention which is not therein expressed. Bingle v. Voltz, 142 Ill. 213; Dickinson v. Dickinson, 138 Ill. 541; McIntyre v. Cross, 3 Ind. 444; McQueen v. Lily, 131 Mo. 16; Coffman v. Coffman, 85 Va. 459. (4) To deprive the heir of an estate not devised, it is not sufficient that the testator signify his intention that such heir shall not inherit; he must make a valid disposition of it to some other person. Watson v. Watson, 3 Ind. 444; McQueen v. Lilly, 131 Mo. 16; Coffman v. Coffman, 85 Va. 459. (5) The presumption that the testator intended to dispose of all his property is only a presumption, and does not exist when in conflict with the plain provisions of the will, which fail to dispose of all his property, and is no stronger than the presumption that a parent does not intend to disinherit his child or that the testator is presumed to know the law. The law has provided a definite successor to the estate in the absence of a testamentary disposition, and the

heir is not to be disinherited except by express words, or necessary implication. These presumptions have only such weight as is given other legal presumptions, and must yield to facts. Erhart v. Dietrich, 118 Mo. 427; 29 Am. and Eng. Ency. of Law, 510; Boysseau v. Aldridges, 5 Leigh 222; Lynch v. Railroad, 112 Mo. 433. (6) When a testator interprets a particular clause in his will, the courts, when called upon to construe it, will follow that interpretation. Small v. Field, 102 Mo. 129; Reinders v. Koppelman, 94 Mo. 343. The term "inherit," as used in clause 8 of the will, means: "To take the property by descent as an heir; to receive as a right the title descendable by law from an ancestor," etc. Anderson's Dictionary of Law, title, Inherit; Webster's Dictionary; 10 Am. and Eng. Ency. of Law, 777; McArthur v. Scott, 113 U. S. 128; McQueen v. Lilly, 131 Mo. 17. (7) The language of the will shows an intelligent use of words and terms, and it is clear from the will itself that the testator only disposed of one-half of his real estate, after deducting the 160 acres to Mrs. Belcher, and only disposed of seventenths of his personal estate. No other intent can be drawn from the will itself.

VALLIANT, J.—This is an application to a court of equity to construe the will of Resin S. Judy deceased. The plaintiffs are the executors and the defendants the beneficiaries under the will and heirs at law of the testator.

The will is in these words:

"I, Resin S. Judy of Cass county, in the State of Missouri, being of sound mind and revoking all other wills heretofore made by me, do make and publish this, my last will and testament:

"(1) I give and bequeath to my grandson, Oscar M. Judy, son of my son John J. Judy, the two notes given by him to me, one of said notes being for the sum of one hun-

dred dollars, dated February 16th, 1886, and one for the sum of nine hundred dollars, dated January 1st, 1886.

"(2) I give and bequeath to Belle Judy, wife of my grandson, Oscar M. Judy, the sum of one thousand dollars in trust to be held by executors hereinafter named, said executors to place said sum of one thousand dollars at interest on good security, and said Belle Judy to enjoy the income of said sum during her natural life, and on her death the principal to be divided equally between her two children, her son, Wilbur H. Judy, and her daughter, —— Judy (given name now unknown).

"(3) I give, devise and bequeath to Annie Arnett, my granddaughter, the daughter of my daughter Araminta Daniel, now deceased, one-half interest in the real and personal property, to which her mother would be entitled in my estate, her share to be held in trust by my executors herein named, and that they pay to her annually the interest and proceeds arising from the rents of her portion of said estate to go to the heirs of her body, to be turned over to them by said executors at the time they become of age. I also will that the said Annie Arnett shall at my death have her notes which I hold surrendered to her, together with the deed of trust and notes on her real estate and lots in Freeman, Missouri.

"(4) I give, devise and bequeath to my daughter Sallie A. Belcher, the east half of the northeast quarter of section 30, and the west half of the northwest quarter of section 29, in township 46, range 31, to have and to hold unto her heirs and assigns forever from and after my decease; and I also give, devise and bequeath to her one-fifth of my personal estate when divided.

"(5) I give and bequeath to my daughter Catharine Von de Veld, a note for the sum of five hundred and eighty-one dollars, said note given by her to me and also the sum of fifty dollars of my estate and no more.

"(6) I give, devise and bequeath to the children and heirs of my son John Judy, deceased, to-wit: Emma Carpenter (nee Emma Judy), Mary Hurst (nee Mary Judy) and Altia Judy, one-third to each of the interest of their father, John Judy, in my estate.

"(7) I give, devise and bequeath to the children of my daughter Tarissa, now deceased, as follows: To Annie Wooldridge (nee Annie Jones), one-third part of the share which my said daughter, Tarissa, would have in my estate at law, and to her two sons, Harlie Clark and Homer Clark, I give, devise and bequeath to each the one-third interest which their said mother would have in law, to be held in trust by my executors for them until they become of age.

"(8) In speaking in this will of the interest which my daughter, Araminta Daniel, deceased, and my son, John Judy, deceased, and my daughter, Tarissa, deceased, would have in my estate, I mean their interest which they would inherit by law after taking out the specific bequests and devises made by me in this will to others named herein.

"I hereby appoint James T. Burney and H. V. Hurst as my executors of this my last will, and hereby revoke all former wills by me made.

"In testimony whereof I have hereunto subscribed my name and affixed my seal this 27th day of September, 1893.

"R. S. Judy (Seal.)"

The testator had had five children, two of whom, Mrs. Belcher and Mrs. Von de Veld, survived him, but three had died at the time the will was written, leaving descendants. At the hearing testimony was offered on the part of the executors tending to show what the testator said after making the will as to its effect, that is, that he understood that it disposed of all his estate, and also to show the state of his feelings towards his daughter Mrs. Von de Veld, that is, that he said that her husband Von de Veld had been the worst enemy

he ever had and that she had taken her husband's part through it all. This testimony was received subject to the objection made by the defendants at the time, but was afterwards by the court, before its decision, excluded. The effect of the decree was that the will disposed of only five-tenths of the real estate and seven-tenths of the personalty, leaving the balance to be disposed of under the law of descents and distributions.

There is really not much difference between the counsel as to the rules of law that should govern in the interpretation of the will, though they differ widely as to the meaning of the will itself. This court has frequently declared the principles that should guide us in such investigation. In Murphy v. Carlin, 113 Mo. 112, after quoting the statute (sec. 8916, R. S. 1889), requiring the court to "have due regard to the directions of the will and the true intent and meaning of the testator in all matters brought before them," the court per BRACE, J., said: "The true intent and meaning of the testator can be best ascertained by the courts and those concerned in the execution of wills by putting themselves, so far as may be, in the place of the testator and reading all his directions therein contained in the light of his environment at the time it was made. [Hall v. Stephens, 65 Mo. 670; Noe v. Kern, 93 Mo. loc. cit. 373; Suydam v. Thayer, 94 Mo. 49; Munro v. Collins, 95 Mo. 33; Small v. Field, 102 Mo. 104; Long v. Timms, 107 Mo. 512.] When that intent and meaning can be thus clearly ascertained, then all technical rules and adjudicated cases in other jurisdictions that would stand in the way of its execution must be disregarded." [See, also, McQueen v. Lilly, 131 Mo. 9; McMillan v. Farrow, 141 Mo. loc. cit. 62; Rothwell v. Jamison, 147 Mo. loc. cit. 613; Cross v. Hoch, 149 Mo. loc. cit. 338.]

One of the points in this will upon which a difference of opinion exists is in that part of the 5th clause which after

giving a specific legacy to Mrs. Von de Veld, concludes, "And also the sum of fifty dollars of my estate and no more." The meaning of those words must be gathered from the will itself and not from what the testator after making it may have said he intended or understood it to express. Therefore, the court rightfully excluded the testimony offered on that point.

But if the meaning of the words just quoted is in doubt, if it be doubtful whether the testator really meant that in the final division of his estate among his children and their descendants this daughter was to have such an unequal share, the state of his feelings towards her is a legitimate fact to be considered in solving that doubt. It assists us in seeing the case as the testator saw it. Therefore, the testimony on that point should have been received and weighed.

Although the intention of a testator to disinherit his heir be clearly expressed, yet unless the will makes other disposal of his property it goes to the heir, not by force of the will, but by force of the law of inheritance. [Coffman v. Coffman, 85 Va. 459; Watson v. Watson, 110 Mo. loc. cit. 170.] This principle is relied upon and these and other authorities cited to sustain it by counsel for respondents and from it they draw the conclusion that though the purpose to exclude Mrs. Von de Veld from further share in the estate be apparent on the face of the will, yet if any of the estate is left undisposed of she is entitled to a child's share of it under the law of inheritance. The conclusion so drawn is correct. If as the trial court concluded one-half of the real estate and three-tenths of the personal property are left undisposed of by the will that residue is to go to the heirs at law of whom Mrs. Von de Veld is one, but if on the contrary the will disposes of all the estate, she takes what the will gives her and no more. It is not necessary that the property should be specifically devised or bequeathed; it may pass under a general form of expression showing the testator's purpose.

And here again we must look at a will in the light of the testator's surroundings; if he is excluding his children and bestowing his bounty on strangers, he would naturally use different language to express his purpose from that he would use if he were directing the division of his estate among those who, if there was no will, would take by inheritance. It is also to be observed that in such case the law starts out with the presumption that the testator intended to dispose of his whole estate. [Watson v. Watson, 110 Mo. loc. cit. 170.]

Having thus glanced at these general rules, about which as we have said there is little, if any, difference of opinion, let us now look at this will and ascertain from its four corners the testator's "true intent and meaning."

There were five children and their descendants; therefore, if there had been no will there would have been five shares in the estate. If the testator recognized and intended to preserve those five shares intact except as he might slice off from one share or another for specific devise or bequest, or if he intended to make only specific devises and legacies, leaving the rest of his estate to be disposed of as the statute in case of intestacy prescribes, then the view taken by the circuit court was correct, because then the only shares disposed of are those of his deceased son and daughter, John and Tarissa, one-half of the share of his deceased daughter Araminta and the share of Mrs. Belcher in the personalty, leaving Mrs. Belcher's one-fifth in the realty, Mrs. Von de Veld's one-fifth in the whole and one-half of the share of the deceased daughter Araminta undisposed of. That would result in Mrs. Belcher's receiving not only the 160 acres and one-fifth of the personalty the will gives her, but also one-fifth of the remaining undisposed of shares, both real and personal, and likewise in giving to Mrs. Von de Veld and the descendants of the deceased children *per stirpes* each one-fifth. That is to say, if we reduce the testator's intention

Hurst v. Von De Veld.

to writing we will add to the fourth clause of the will until it will read as follows: "I give, devise and bequeath to my daughter, Sallie A. Belcher, the east half of the northeast quarter of section 30, and the west half of the northwest quarter of section 29, in township 46, range 31, to have and to hold unto her heirs and assigns forever from and after my decease; and I also give, devise and bequeath to her one-fifth of my personal estate when divided. It is also my understanding and intention that in addition to what is here given her she will have by inheritance, one-fifth of what she would have inherited of my real estate if there had been no will and one-fifth of the share her sister Mrs. Von de Veld and one-fifth of one-half the share her deceased sister Mrs. Daniel, under like condition would have inherited of both real and personal estate."

And similar corresponding additions would have to be made to the third, fifth, sixth and seventh clauses of the will.

Is that the natural, unforced meaning of the will? Discarding for the time being the trammels of technicalities, is that the impression that one gets from reading the will, of what this testator really intended? If that was really his intention it will stand the test as well of being plainly so expressed as of being implied, but if it should be so written it would seem to be a queer will.

If we are satisfied that that was the intention we must give it effect as such, however queer we may consider it. And though we may from the circumstances surrounding the case doubt if the testator really so intended, yet if the undoubted effect of the language used is to leave one-half the real estate and three-tenths of the personalty undisposed of we can not help it out by interpretation, but must adjudge it as we find it. But if we are satisfied that that was not what the testator really intended although by reason of ill-considered expression it is susceptible of that construction, we

should not so construe it, if it is susceptible of another construction more in harmony with what seems to be the testator's real purpose.

In reading this will as a whole we are impressed with the conclusion that the testator intended to dispose of his whole estate. He had before him, in mind, all the objects of his bounty, his children, those living and those dead, and the descendants of the latter, and he had in mind his whole estate. His children and their descendants he calls by name except one great grandchild whose name he says he does not know, and his "estate" he mentions as a whole in six of the eight clauses of the will. The general purpose of the will apparently is, to dispose of the whole estate, making some provision in it for each one of his descendants.

The language of the will is not such as would be used to devise or bequeath property to strangers or to persons who would take only by force of the will, but the testator seems rather to recognize that his estate is ultimately to be divided among these descendants of his, and he only undertakes to direct by his will the share that each shall have when that final division is made. He does not divide his property in kind among all his descendants, giving to this one a particular tract and to that one another distinct portion; if he had done so and had omitted from the will a part of his property, the part so omitted would have passed to his heirs as if no will had been made and in that event the daughter discriminated against would share equally in the undisposed of property with the favored children. But after the specific devises and bequests contained in the first five clauses of the will he treats the rest of his estate as a whole which he recognizes will go to his descendants, and which he does not attempt to divert from them but does assume to divide among them according as he wills and not entirely as the law would have done. For example he does not say that he gives to his granddaughter

Annie Arnett one-tenth of his estate, but he says he gives her "one-half interest in the real and personal property to which her mother would be entitled in my estate;" to the three children named in the sixth clause of John Judy deceased, he gives "one-third to each of the interest of their father, John Judy in my estate;" and to the three children of his daughter, Tarissa each one-third of their mother's share.    This interest or share that he speaks of has reference to the final partition and distribution of the estate and it naturally embraces the whole estate.    The ultimate partition and distribution of his estate among his children, grandchildren and great grandchildren was the prominent event in his mind and was the event to which each clause in the will pointed.    Therefore, when in the latter part of the fifth clause he said that he gave to his daughter Mrs. Von de Veld "the sum of fifty dollars of my estate and no more" he meant that at the final distribution of the whole estate that was to be her share and the consequence would inevitably follow that by so much as her share was reduced by that much was the shares of the others increased.    And so of the devise and bequest to Mrs. Belcher in the fourth clause, although the words "and no more" are not used, yet that clause was written in view of the same event and it meant that that was to be then her share.    There was not the same reason existing to specify that that was to be the whole share of Mrs. Belcher as there was for so expressing in reference to Mrs. Von de Veld, because the fourth clause gave to Mrs. Belcher about the same quantity both of land and personalty that she would have taken by inheritance.    But the fact that it does give her as much as the law would have given her if there had been no will is a strong reason for concluding that her father did not intend to give her that much in addition to a child's full share, but that he intended that to be her whole portion.

The same general intent governs the devise and bequest

to Annie Arnett in the third clause.    True she is cut off with one-half the interest that her mother would have inherited, but she gets as much as or more than any other grandchild and that was doubtless the testator's reason for the direction. As to the children and grandchildren of John *inter sese* the will is explicit enough; in the first and second clauses Oscar and his family get all that was intended for them and in the sixth clause the interest that John would have had if living is given to his three daughters Emma Carpenter, Mary Hurst and Altia Judy.    The seventh clause divides the interest that the testator's deceased daughter, Tarissa, would have taken equally among her three children.    And thus the whole estate is disposed of, giving to the three daughters of John named in the sixth clause and the three children of Tarissa named in the seventh clause all of the estate except that devised and bequeathed in the first, second, third, fourth and fifth clauses of the will, leaving nothing to be inherited. And it all results in an intelligent and reasonably fair division of the estate among all the descendants of the testator, except as to one daughter, against whom he made express discrimination for a reason given, which whether just or not, was satisfactory to him.    This, in the language of the statute, is the testator's "true intent and meaning" gathered from the will itself, and to that intent and meaning all other theories of interpretation must yield.    If we should say of the daughter named in the fifth clause that she should have what is therein given her and that she should have in addition thereto one-tenth of the real estate and one-fifth of three-tenths of the personal property we should have to give to the words "and no more" in that clause a fanciful and purely technical interpretation that would be equivalent to erasing them entirely from the will.

The judgment is reversed and the cause remanded to the circuit court with directions to enter a decree construing the

will in accordance with the views herein expressed and direct-
ing that the executors pay the cost of the suit *de bonis
testatoris*, and it is further ordered that the executors in like
manner pay the costs accrued in this court.

All concur.