MEINERS et al. v. MEINERS et al., Appellants.

**Division One, February 10, 1904.**

1. **Will**: COMPLETE DISPOSITION OF PROPERTY. A will that is fairly susceptible of being construed into a testamentary disposal of the testator's whole estate will be so construed in preference to construing it to be a case of partial intestacy.

2. ——: ——: ONE-THIRD TO THREE SONS. The will shows that the testator intended to dispose of his whole estate, and that he did not intend to make equal disposition of his property among his children, of whom he had six. To three of them he gave certain sums of money, and devised real estate to the

Meiners v. Meiners.

other three in these words: "I will, give, bequeath and devise to my sons, John, Herman and Aloysius, the undivided one-third of all my real estate," describing it, and then by the next clause he said: "All the balance and residue of my personal property I will and bequeath" to the same three sons. *Held*, that this will did not dispose of simply one-third of the real estate, leaving the remaining two-thirds undisposed of, but gave the whole to the three sons in equal parts.

Appeal from St. Louis City Circuit Court.—*Hon. O'Neill Ryan*, Judge.

REVERSED AND REMANDED (*with directions*).

*Stewart, Cunningham & Eliot* for appellants.

Common sense and not rules of grammar is what is wanted in the interpretation of wills. The grammatical construction of the sentence in the first part of the fourth clause of the will of Herman Meiners must yield to the evident intent to give an undivided third interest in his real estate to each of his three sons. Taking up the Missouri authorities on the subject of the interpretation of wills, we note the cases where the courts have found it necessary to supply words to effectuate the intention of the testator: Farish v. Cook, 78 Mo. 220: In this case the court held that a gift of her "worldly goods" did not include real estate. The court takes occasion to recognize the rule that there is a strong disposition in the courts to construe a will so as to prevent intestacy, but held that the case was one which the principle could not control. This is the strongest case in the Missouri Reports against the proposition claimed for the defendant. Nichols v. Boswell, 103 Mo. 151: Having a will before it in this case in which there was repugnancy between different clauses, the court laid down the following propositions: "The first and great rule in the exposition of wills, to which all other rules must bend, is, that the intention of the testator expressed in his will shall prevail, provided it be consistent with the rules of law." "When it becomes necessary to ex-

plain inconsistencies or ambiguous or doubtful expressions, the situation of the testator and objects of his bounty, and all the circumstances surrounding the parties may be considered.'' In order to effect the evident intention of the testator, the court supplied the words ''undisposed of'' in one of the clauses, so that the will might be consistent with the general intention indicated. ''This supplying of words to effect the manifest intention is allowable under the well-known rule that in the construction of a will the intention of a testator, apparent in the will itself, must govern, and that in order to effectuate that intention as collected from the context, words may, when necessary, be supplied, transposed or changed.'' ''And it is no objection to supplying the omission that different persons may differ in regard to which of two or more words of similar significance, will more appropriately supply the omissions.'' Watson v. Watson, 110 Mo. 164: In this case the court took occasion to construe the word ''heirs'' as meaning children. And after a gift of a life estate in certain lands, construed a clause, ''I will that my other land be equally divided between my children'' to cover the remainder after the life estate. The court did this upon the plain proposition that the law will presume that a testator intended to dispose of all of his estate. ''Though awkwardly expressed, these words were intended to include the quantum of estate in lands not devised to the wife. This is a proper case to apply the presumption against partial intestacy.'' In this case the court also stated that there is good authority that evidence may be introduced showing what advancements had been made to the deceased, if any, during the testator's lifetime. ''Such evidence would not be taken to add to or vary the words of the will, but for the purpose of placing the court in the position of the testator that it might be the better able to understand the language used.'' Thomson v. Thomson, 115 Mo. 56: In this case while no ambiguity appeared on the face of the

will itself, the court allowed parol evidence to be intro-
duced to show that by following the literal words of
the will, a description contained in it would reach no
practical result. The court supplied the words "thence
west one quarter of a mile" in the description. The
court says: "Supplying these words, all difficulty
banishes and all discrepancy ceases." "In relation to
supplying words, where it is obvious from the words
used and the general tenor and context of the instru-
ment that certain words or their substance have been
omitted, such words may be supplied by construction."
"Where it is clear on the face of a will that the testator
has not accurately or completely expressed his mean-
ing by the words he has employed, and it is also ap-
parent what words or their substance have been omitted,
these words may be supplied to effectuate the intention
as collected from the context. Garth v. Garth, 139 Mo.
456: In this case the court regards the fact that the
controlling intention of the testator was to make a sub-
stantial provision for his grandchild and it accordingly
interpreted a gift to the grandchild in such a way as
to make it beneficial, where a literal reading would have
made it practically worthless. McMillan v. Farrow,
141 Mo. 55: "The cardinal rule in the interpretation
of a will is, that the intention of the testator as gathered
from the whole instrument shall control, and in arriving
at such contention, the relation of the testator to the
beneficiaries named in the will, and the circumstances
surrounding him at the time of its execution, may be
taken into consideration." "The true intent and mean-
ing of the testator can be best ascertained by the courts
and those concerned in the execution of wills by putting
themselves, so far as may be, in the place of the testator
and reading all his directions therein contained in the
light of his environments at the time it was made."
Gross v. Hoch, 149 Mo. 325: In this case the court
takes occasion to quote with approval Judge BLACK's
declaration in Lewis v. Pittman, 101 Mo. 281, to the effect

that the common sense view of the matter is to gather the intention of the testator from the whole will and to give effect to it. The court takes occasion in this case to point out the fact that an uneducated testator who is not a lawyer can not be supposed to use technical words in the sense which a lawyer might give to them if they are susceptible of another meaning. The court accordingly held that the words "for her use" have no reference to the Statute of Uses, with which the testator can hardly be supposed to have been familiar, and that the words "her heirs" would not be construed in the light of the rule in Shelley's case, with which the words might technically come in contact; that the word "heirs" might mean children. And that by reading the whole will, the court might reach an intelligible construction, notwithstanding faults in the language throughout. Briant v. Garrison, 150 Mo. 655: In this case the court construed the word "between" to mean "through." The manifest purpose of the testator as gathered from the whole will was to make ample provision for his wife for life, and the remainder of his estate was to go to his brothers and sisters, except as to a devise to another person of land lying between sections 8 and 17, etc. Held, that the word "between" was a mistake of the writer of the will, and that the true intent and meaning of the testator would be carried out notwithstanding the inaccuracy. The court says: "The will is defective, because of the use of the word 'between.' If that word is rejected and the word 'through' is supplied, the defect in the will is removed and the intention of the testator is carried out." "The question, therefore, resolves itself into this: Shall this court reject the palpable mistake of the scrivener and supply the word which effects the intention of a testator, or shall it 'stick in the bark' and hold that the will calls for an impossible description, that there is a patent ambiguity which can not be explained by parol testimony, and that the court is, therefore, bound to turn the children out of court

and give the whole property to the testator's brothers and sisters when he only intended them to have whatever was left?'' ''Justice, equity, good morals all favor the former construction.'' Walton v. Drumtra, 152 Mo. 489: In this case, at pages 507 and 508, the court takes occasion to notice the better line of construction allowed under modern authority to wills, so that an intention can be gathered by inference from the whole will. Records v. Fields, 155 Mo. 314: In this case the testator had, with some inaccuracy, directed that property be equally divided between the heirs of W. and J. There being a different number of persons who were heirs of W. from the number of whom were heirs of J., the question was whether the property should be divided per capita among them or in classes. It was held that the testator meant to divide the property into two parts, one part to the heirs of W. and one part to the heirs of J. An argument used in this case is equally effective in the present case. The court says: ''If the testator intended that each child and grandchild of his two brothers should take an equal share of this residue, how natural it would have been for him to have named each of them and given each one-ninth of it.'' So, in the case at bar, how natural it would have been for the testator, Meiners, to have devised in the fourth clause of his will, the fractional interests in his real estate which he intended should go to each of his children, if his gift was confined as claimed by plaintiffs. It would have been easy to have given each of the three sons named two-ninths and to the other sons one-ninth, which would have been the same in effect, as the result of intestacy in respect of two-thirds undivided interest. Clotilde v. Lutz, 157 Mo. 439: In this case the court declares that there is no better way to arrive at the intention of the testator than to put one's self as nearly as may be in the position of the testator at the time of the execution of the will. If we do this, we can not for a moment conceive of the testator's committing the absurdity of devis-

ing an undivided one-third in all his real estate to three sons conjointly, with the effect to allow two-thirds undivided interest to fall under the Statute of Descents to his heirs generally. The purpose of an entire disposition of his property is too plain to admit of such a supposition. RoBards v. Brown, 167 Mo. 447: In this case the court rejected a clause in the will for the purpose of carrying out the general intent of the testator.

*Seneca N. & S. C. Taylor* and *Charles Erd* for respondents.

(1) (a) In construing a will, the words must be given their ordinary popular signification, unless in the context something unequivocally indicates a different use. Hall v. Stevens, 65 Mo. 673; Farish v. Cook, 78 Mo. 218; Nichols v. Boswell, 103 Mo. 151; Watson v. Watson, 110 Mo. 171; Elliott v. Tapp, 63 Miss. 142; Burk v. Lee, 76 Va. 386; Couch v. Eastman, 29 W. Va. 784; Gray v. Woodward, 7 L. R. A. 376; Gray v. Pearson, 6 H. L. C. 61; Edgerly v. Marker, 28 L. R. A. 328; Young v. Robertson, 2 Scotch App. 1108; 2 Story Eq. Juris., sec. 1047b; 2 Jarman on Wills, 726; 4 Kent Com., 537. (b) The grammatical and ordinary popular sense of the words should be adhered to, unless it would lead to some absurdity, repugnancy or inconsistency with the rest of the will. Farish v. Cook, 78 Mo. 218; Watson v. Watson, 110 Mo. 164; White v. Crawford, 86 Mo. App. 268; Given v. Hilton, 95 U. S. 591; Hancock's Appeals, 112 Pa. St. 532; Seibert v. Wise, 70 Pa. St. 147; Couch v. Eastman, 29 W. Va. 784; Cody v. Bun, 46 N. J. Eq. 131; Bonnell v. Bonnell, 47 N. J. Eq. 540; Perkins v. Matthews, 49 N. H. 110; Baress v. Kirkwood, 8 Gray 513; In re Woodward, 117 N. Y. 325; Wylie v. Lockwood, 86 N. Y. 301; Williams on Executors, 1078. (c) Where the residuary clause of a will mentions personal property only it is not permissible for the court to so enlarge it as to cover the residue of real estate. Farish v. Cook, 78 Mo. 212; Watson v. Watson, 110 Mo.

164; Marlatt v. Beal, 140 Mo. 187; White v. Crawford, 87 Mo. App. 262; Peck v. Shagman, 43 W. Va. 304; Redfield on Wills (3 Ed.), p. 308, sec. 2; Eckford v. Eckford, 53 N. W. 346; Graham v. Graham, 23 W. Va. 40. (2) Where the words are capable of a natural, and also of a secondary and unusual meaning, preference should be given to the natural meaning. Hall v. Stevens, 66 Mo. 673; Farish v. Cook, 78 Mo. 218; Nichols v. Boswell, 103 Mo. 151; R. S. 1899, sec. 4650; Smith v. Bell, 6 Pet. 75; Garth v. Garth, 139 Mo. 462. (3) Neither the statute nor its construction as given by the courts is intended to vest power in the courts, where the language is clear and unambiguous, to make for the intestate a disposition of his property not made by him. Garth v. Garth, 139 Mo. 462; Mersman v. Mersman, 136 Mo. 244; Smith v. Hutchinson, 61 Mo. 83; Molan v. Fuerman, 34 Mo. 39; White v. Crawford, 87 Mo. App. 262; Eliott v. Tapp, 63 Miss. 142; Burk v. Lee, 76 Va. 386; Pugh v. Pugh, 105 Ind. 554; Bonta v. Bonta, 118 Ill. 186; Avery v. Chappell, 16 Amer. Dec. 53; Graham v. Graham, 23 W. Va. 40; Couch v. East, 29 W. Va. 784; King v. Ackerman, 67 U. S. 409. (4) Devises by implication are not to be indulged unless they arise from other parts of the will, and are so strong that the contrary intent can not be supposed. Post v. Hooner, 33 N. Y. 599; Holbert v. Hutton, 42 N. J. Eq. 28; Denny v. Smith, 42 N. J. Eq. 504; Bartlett v. Papin, 33 W. Va. 72; Graham v. Graham, 23 W. Va. 78; Sponler's Appeals, 107 Pa. St. 95; Rathborn v. Diekman, 3 Paige 9; Dashwood v. Papin, 18 U. S. 41; Jarman on Wills, 465. (5) The question in expounding a will is not what the testator meant, but what is the meaning of his words. Hancock's Appeals, 112 Pa. St. 542; Couch v. Eastman, 29 W. Va. 784; Elliott v. Tapp, 63 Miss. 142; Cody v. Bun, 46 N. Y. Eq. 131; Parks v. Shagman, 43 W. Va. 304; Eckford v. Eckford, 53 N. W. 346; Smith v. Bell, 6 Peters (U. S.) 74; Graham v. Graham, 23 W. Va. 36; Sponler's Appeals, 107 Pa.

St. 95. (6) Where the provisions of a will are clear and simple, no reason exists for taking the testator's words in any other than their natural sense. Sponler's Appeals, 107 Pa. 85; Cody v. Bun, 46 N. J. Eq. 131; Wiley v. Lockwood, 86 N. Y. 301; Parsons v. Winslow, 6 Mass. 175. (7) Though there exists a presumption that the testator intends to dispose of all his property, yet this presumption simply adds a general intent. The general intent can not control terms plainly to the contrary nor enlarge distributions beyond their clear meaning. Watson v. Watson, 110 Mo. 164; White v. Crawford, 87 Mo. App. 268; Given v. Hilton, 95 U. S. 591; Avery v. Chappell, 16 Am. Dec. 53; Graham v. Graham, 23 W. Va. 40; Pugh v. Pugh, 105 Ind. 554; Couch v. Eastman, 29 W. Va. 787; Cody v. Bun, 46 N. J. Eq. 131; In re Woodward, 117 N. Y. 525. (8) So long as there is no satisfactory evidence to the contrary, the law looking to the relationship and rights of others, will ascribe to the donor that intent most favorable to an equal distribution of his property among all his children. Parks v. Parks, 19 Md. 331; Clark v. Wilson, 27 Md. 700; Dutch's Appeals, 57 Pa. St. 461; Rutch v. Biery, 110 Ind. 449. (9) Though it may be presumed where a testator makes a will that he intended to dispose of all his estate unless the contrary plainly appears, ''there is another rule quite as binding on the court in the construction of a will, namely, that the heir must not be disinherited unless it is done with the express terms of the will, or by necessary implication. The heir-at-law never takes by the act or intention of the testator. His right is paramount to and independent of the will, and no intention of the testator is necessary to its enjoyment.'' Watson v. Watson, 110 Mo. 170; Augustus v. Seibold, 3 Metc. (Ky.) 153; Graham v. Graham, 23 W. Va. 40; Creswell v. Lanson, 7 Gills. & John. 227; Parks v. Parks, 19 Md. 331; Clark v. Wilson, 27 Md. 700; Rutch v. Biery, 110 Ind. 449; Weaver's Appeals, 63 Pa. St. 309.

VALLIANT, J.—This is a suit for the partition of real estate.

The property was owned in his lifetime by Herman Meiners who died January 16, 1900, leaving five sons who are here the parties plaintiff and defendant. The controversy arises out of the different construction the parties have placed on the will of their father.

The testator was seventy-three years of age, of German nationality, but could read and write and speak English. The inventory of his personal property showed it to be worth $36,205.60, the value of the real estate in question was about $25,000.

At the date of the will he had six sons, viz., William, Henry, August, John, Herman, Jr., and Aloysius; these were his only children. The last two were twins and were minors at the death of their father, but became of age before the trial of the case. Henry died before his father, the five others survived, and they are the parties to this suit, William and August being plaintiffs, the three others defendants.

The will is as follows:

"In the name of God, Amen. I, the undersigned, Herman Meiners, of the city of St. Louis and State of Missouri, of sound and disposing mind, do make, publish and declare this my last will and testament.

"Item 1. I will, and direct that my funeral expenses and just debts be paid with convenient speed.

"Item 2. I will, give and bequeath to my daughter-in-law, Kate Meiners, the sum of $7 per month from now on for her services as housekeeper, or so long as she acts in that capacity, as per our verbal agreement.

"Item 3. I will, give and bequeath to William Meiners the sum of $4,000; and to my son, Henry Meiners, the sum of $50. To my son, August Meiners, the sum of $4,000. To Rev. William Reichenbach, now in Mendota, Illinois, the sum of $500. To the Upper Council of the St. Vincent de Paul Society, St. Louis, Missouri, for the use of St. Josephs, $200. To the German

St. Vincent Orphan Association, St. Louis, Missouri, the sum of $200. To the pastor of St. Joseph's Catholic Church, St. Louis, Missouri, German congregation the sum of $300 for holding masses for the repose of the immortal souls of my deceased wife and myself. To the Little Sisters of the Poor, St. Louis, Missouri, the sum of $200. All of the bequests mentioned in this clause shall be paid within two years after my demise and bear no interest, except the bequest for holding masses, which shall be paid sooner.

"Item 4. I will, give, bequeath and devise to my sons, John, Herman, Jr., and Aloysius, the undivided one-third in all my real estate, houses numbered 1438, 1440 and 1442 on the east side of North Tenth street; also houses numbered 1322 and 1324 on the east side of North Tenth street, St. Louis, Missouri, with all improvements thereon.

"Item 5. All the balance and residue of my personal property I will and bequeath to my sons, John, Herman, Jr., and Aloysius.

"Item 6. I appoint my son, John Meiners, trustee for my minor children, Herman, Jr., and Aloysius, during their minority. He shall file no bond as such trustee.

"Item 7. I will and ordain that in the event that any of the various legatees contest this will, or any legacy therein mentioned the party so contesting shall be barred and receive no benefit from the estate.

"Item 8. I nominate, constitute and appoint my son, John Meiners, executor of this will. He shall file no bond as such executor.

"Witness my hand and will this 24th day of January, 1896.

"HERMAN MEINERS."

The controversy is over the meaning of Item 4, the plaintiffs contending that thereby only an undivided one-third of the real estate is devised to the three sons therein named, leaving two-thirds undisposed of to de-

scend to the five sons as heirs; the defendants contending that it is a devise of an undivided one-third to each of them and consequently a devise of the whole. The trial court took the plaintiffs' view of the subject and rendered judgment accordingly. The defendants appeal.

There is not much, if any, difference of opinion between the learned counsel regarding the principles of law discussed in their brief. To find the intention of the testator must be the main purpose of our search and that intention we must find from the will itself. We may resort to outside evidence to learn the conditions under which the will was made, for the purpose of placing us in the position of the testator, that we may view the subject from the standpoint from which he viewed it, but viewing the subject from that standpoint we must find from the will alone the testator's meaning. [McMillan v. Farrow, 141 Mo. 55; Clotilde v. Lutz, 157 Mo. 439.]

It is also the law that words in a will must be given their ordinary meaning and grammatical construction, unless it is manifest from the whole instrument that they were used in a different sense; and this leads to the further proposition that the intent is to be gathered from the whole instrument, so that if a literal construction of a particular clause would render it a discord in the whole will, we should not give it that construction if it is reasonably susceptible of another that would bring it into harmony. For authorities to sustain these propositions of law we refer to the briefs of the learned counsel which will appear in the report of this case.

If we conclude that the plaintiffs' interpretation of the clause in question is correct, then we must say that it was the testator's intention to leave two-thirds of his real estate undisposed of, to descend to his heirs as the law might direct.

When a man makes a will that is fairly susceptible of being construed into a testamentary disposal of his whole estate it will be so construed in preference to construing it to be a case of partial intestacy. [Watson v. Watson, 110 Mo. 164; Hurst v. Von De Veld, 158 Mo. 239; Willard v. Darrah, 168 Mo. 660; RoBards v. Brown, 167 Mo. 447.]

This will was written at the dictation of the testator whose native language was German, yet who could read, write and speak English; the will shows that his social and religious affiliations were German. Those are facts to be considered when we are asked to apply the rules of English syntax to sentences framed by him. When the will was written he had six sons, three of whom were living with him, Henry who has since died, and the two youngest who were then minors; Henry's wife also lived with him and kept his house, she is named in the will. The three other sons seem to have been in business and lived elsewhere. That he did not intend to divide his estate equally between his children is shown in every feature of the will, that he intended to dispose of his whole estate is also shown by the whole instrument. He starts out with the solemn statement that it is his last will and testament; it is in fact the last expression of his wish in reference to the division of his property among his children. After directing that his personal expenses and debts be paid he turns to the objects of his bounty and gives to each by name the share of his estate he intended him and her and them to have.

After his funeral expenses and general debts, he remembers his obligations to his daughter-in-law, Kate, the wife of his son Henry, and makes a bequest to her, which he distinguishes from a mere gratuity by specifying that it is in recognition of her services as housekeeper. Then he turns to the objects of his bounty, naming first his three older sons, giving to two of them $4,000 each and to one only $50, and in the same clause makes certain charitable bequests. The two sons to

whom he gave the $4,000 legacies were grown men living away from him and presumably established in business; why he was more liberal to them than he was to Henry we have no right to inquire; it was his will and that is all we are entitled to know. So far as the testator's intention is expressed on the face of this will, those legacies comprised all of his estate that those sons were to have; if they are entitled to anything more it is because the will omits to dispose of all the estate, and before we can say that the will omits to dispose of all the estate we must say that by this fourth clause he intended to give only one-third of the property therein specified to his three younger sons jointly, and leave two-thirds undisposed of; that is, that he intended by the use of the language there appearing that each of those three sons should take an undivided ninth by the will and an undivided one-fifth of two-thirds by inheritance. No possible motive is suggested for such a peculiar intentional disposal of the property as would result from that interpretation of the language.

The learned counsel for respondents are correct in saying that in order to deprive the heir of his inheritance, it must not only appear from the will that the testator did not intend him to take any portion of the estate or that he intended him to take only a specified portion, but the will must also give the property to some one else. Cases above cited sustain that proposition. Therefore, even if in the third clause the testator had said that the legacies therein given to his three older sons should constitute all that they were to have of his estate, yet if he left property undisposed of by the will, those three sons would share in the inheritance of it. Unless all the real estate named in the fourth clause is devised to the three sons therein named, these plaintiffs are entitled to their shares by inheritance.

The language of the fourth clause is, "I will, give, bequeath and devise to my sons John, Herman, Jr., and Aloysius the undivided one-third of all my real estate,"

etc.  Did the testator by those words intend to give to John, Herman and Aloysius each one-third of the property specified and thus dispose of all of it, or did he intend to give them each one-ninth and leave undisposed of the other two-thirds?  His intention is what we are seeking to find, and when we find it we must give it effect even if we have to supply a word, provided the word does no violence to the text but only clears the doubtful meaning.

If we should cut this clause out of the body of the will and read it alone we would hold that the plaintiff's interpretation of it was correct.  But we have no right to do that; we must consider the purpose of the testator which runs through the will from its beginning to its end.  We have already discussed the clauses which precede; let us now look at those which follow this fourth clause.  "Item 5.  All the balance and residue of my personal property I will and bequeath to my sons, John, Herman, Jr., and Aloysius."  That is the last gift in the will; why is that residuary clause limited to personal property, why does it not include real estate?  It indicates that the testator recognized that he had not up to that time disposed of all his estate, it also indicates a purport to do so, and since he therein treats the residuum as consisting of personal property only, it goes to show that he considered the real estate already disposed of.  The sixth clause also shows a continuing anxiety for the three last-named sons as distinguished from that for the three older ones, for whom he had provided in the third clause.

In the sixth clause he appoints John trustee for his younger brothers and exhibits such confidence in him that he directs that no bond as such trustee be required, and in the eighth clause appoints John his sole executor and requires no bond.  There was evidence on the part of the plaintiffs to show that there was no lack of love and confidence from the father to these three older sons.  That may be so, the discrimination against them in the

.will may have been dictated more by their father's judgment than his affection.   Finally, the seventh clause indicates a strong desire that there should be no contest of the will.   Unless the testator was conscious of discrimination and that it might create dissatisfaction, why should he anticipate a contest?   In that clause he wills that if any one contests the will he shall be barred from all share in the estate.

All the clauses, both those preceding and those following the fourth clause, indicate that the testator understood that his whole estate was covered by his will.

When he said that those three sons were to have an undivided third of his real estate he meant that each was to have an undivided third.   Any other construction would upset the whole plan of the will and defeat the testator's intention.

The judgment is reversed and the cause remanded to the circuit court with directions to enter judgment for the defendants dismissing the plaintiffs' bill.

All concur.