Snyder v. Toler.

GERTRUDE SNYDER, Appellant, v. URIAH T. TOLER, Respondent.

Kansas City Court of Appeals, May 4, 1914.

1. WILLS: Trusts: Precatory: Construction. The plaintiff sued to recover under a will on the ground that it created a precatory trust. The property was bequeathed by will to her stepmother, and it was sold to the defendant, who was a brother of her deceased father. The bequest under which the precatory trust is claimed to have existed is as follows: I give to my beloved wife, Ann C. Toler, all my property, real, personal and mixed, absolutely, knowing she will deal properly with my grandchild, Gertrude Snyder, and my son, Uriah Toler." *Held*, that these words of recommendation are an intimation of the wishes of the testator and not a command.

2. **PLEADING: Petition in Two Counts.** Where two counts in a petition are inconsistent with and repugnant to each other, the plaintiff should not be suffered to go on with the case unless he abandons one or the other of such mutually destructive causes.

3. **EVIDENCE: Oral Declarations: Construction.** In an action not to invalidate, but to construe a will, the oral declarations of the testator relating to the meaning of the instruments are not admissible.

4. **WILLS: Construction.** A testator's meaning is to be found in his will alone.

5. ——**: Precatory Trust.** A precatory trust is not to be inferred from expressions of confidence or desire on the part of the testator contained in the will regarding the use to be made of the property devised or bequeathed, unless it fairly appears from the will that the testator contemplated and intended to create such trust and especially no such trust will be implied when it clearly appears that the testator intended to give the devisee full discretion in the use of the property.

Appeal from Cooper Circuit Court.—*Hon. J. G. Slate,* Judge.

AFFIRMED.

*John Cosgrove* for appellant.

*W. V. Draffen* and *Jeffries & Corum* for respondent.

JOHNSON, J.—This suit was begun in the circuit court of Cooper county, March 20, 1913. The petition was in two counts. In the first plaintiff alleged the invalidity of the last will of her grandfather William E. Toler (which had been duly probated) and prayed ''that said pretended paper, writing or will be declared void and of no effect.'' In the second, she claimed under the will on the theory that it created a precatory trust in her favor. A motion to elect was filed by defendant on the ground ''that said counts are inconsistent with each other and the proof of one would disprove

the other." This motion was sustained and plaintiff elected to stand upon the second count. Defendant then answered traversing the allegations of that count. The cause was tried without a jury and the court rendered judgment for defendant. Plaintiff appealed.

William E. Toler died in Cooper county June 18, 1911, possessed of a farm of 100 acres of the alleged value of $10,000. He was survived by his wife Ann C. Toler and his son Uriah, the defendant. Plaintiff was the daughter of another son (Columbus), who died before the death of his father. Columbus and Uriah were children of a former marriage. There were no children of the last marriage.

On May 5, 1911, Toler executed the following will: "I, William E. Toler, do make this my last will and testament; I give to my beloved wife, Ann C. Toler, all my property, real, personal and mixed, absolutely, knowing she will deal properly with my grandchild, Gertrude Snyder and my son, Uriah Toler." After the death of the testator, his widow was appointed administratrix of the estate with the will annexed. The personal estate being insufficient to pay the debts, the land was sold under order of the probate court and was purchased by defendant for $8,500. This sale was invalid on account of the insufficiency of the notice but the widow executed and delivered to defendant a quitclaim deed and gave him possession of the farm. Defendant claims title under that deed. He paid the widow $2500 on the purchase price and out of that money she paid all of the debts of the estate, gave $1550 to plaintiff and kept the remainder of about $400 for her own use. She died shortly before the commencement of this action. It appears that the land was of the reasonable value of $8500 and the real bone of contention is the proceeds of its sale to defendant which after deducting the sums expended by the widow in paying debts and for her own use amounted to $7500, of which she gave defendant $6000

and plaintiff $1550.  Plaintiff contends that by the terms of the will she was entitled to receive one-half of the proceeds, to be put on an equal footing with her uncle, since she was the only child of his deceased brother and it was the obvious intention of her grandfather to create a trust for the equal benefit of her uncle and herself.  The position of defendant is that the will clearly evinced an intention to vest the fee simple title to the land in the widow and that the words "Knowing she will deal properly with my grandchild, Gertrude Snyder and my son, Uriah Toler," cannot be construed as having created a precatory trust but gave the widow full power to exercise her own discretion in the disposition of the estate.

There is evidence, introduced by plaintiff, tending to show that the relationship between her father and grandfather always had been of the closest and most affectionate nature; that her father had worked with and for his father and had aided in the accumulation of the money invested in the farm; that her uncle had not been so self-sacrificing but had lived a more selfish life and that she had always been treated affectionately by her grandfather.

The evidence, as a whole, shows, we think, that the old man loved both sons and his granddaughter and that his wife shared his feelings and there is no suggestion in the evidence of any change in her feelings after her husband's death.  She bore plaintiff no ill will and if it may be said that she discriminated against plaintiff in the distribution of the estate, the error was one of judgment rather than of a purpose to show partiality.

The will was made during the last illness of the testator.  The lawyer who drew it testified (without objection) that the testator, in giving directions for the preparation of the document, said; "I want to give my wife everything I have.  I would divide it up if there was enough but if I should divide it up, there wouldn't

be enough for anybody and if a man divides his property into different pieces, why the amount I have wouldn't be much for anybody and I am giving it to my wife." The lawyer told him that it would be necessary to mention his son and granddaughter in the will and he inquired, "Is it necessary to give them a dollar?" Being answered in the negative and assured that it would be sufficient if they were mentioned, he said, "Well, just put in there that I give it to my wife. I want her to have it and I know that she will deal properly with them."

Counsel for plaintiff insist that the court erred in sustaining the motion to elect. Overlooking other considerations we hold the motion was properly sustained on its merits. It is true the causes alleged in the two counts purported to relate to the same transaction but they were so inconsistent and repugnant they could not stand together in the same action. The test in such instances is whether or not proof of one cause neccessarily would disprove the other. If it would, the petition is bad, and the plaintiff should not be suffered to go on with the case unless he abandons one or the other of such mutually destructive causes. [Soap Works v. Sayers, 51 Mo. App. 310; Mirrieless v. Railway, 163 Mo. l. c. 492; Drolshagen v. Railway, 186 Mo. l. c. 262.]

In one breath plaintiff averred there was no will and in the next that the will created a trust in her favor. She could not prove either assertion without disproving the other. It would be hard to imagine a more striking example of inconsistent positions. The election of plaintiff to stand on the second count, i. e., on the will, reduced the practical issues of the case to the proposition of whether or not the will created a precatory trust. If it did, plaintiff is entitled to recover; if it did not, she has no case. The judgment was fully responsive to this issue and, we may observe

in passing, covered the entire subject-matter before the court for adjudication.

Counsel for plaintiff argue that the court erred in excluding evidence of statements made by the widow relating to the meaning she understood the testator gave to the words "deal properly with my granddaughter, Gertrude Snyder and my son, Uriah Toler." The evidence was properly excluded. This is an action not to invalidate but to construe a will. In such cases oral declarations of the testator relating to the meaning of the instrument are not admissible. As is said in Webb v. Hayden, 166 Mo. l. c. 46: "A testator's meaning is to be found in his will alone; from the will itself we must learn the testator's intent. But if the language employed is of doubtful meaning or susceptible of either of two constructions evidence as to the condition of the testator's feeling toward the persons affected by the will is competent, if it tends to put the court in possession of the facts as the testator viewed them and helps to explain the doubtful passages (Hurst v. Van DeVeld, 158 Mo. 239; Murphy v. Carlin, 113 Mo. 112.)"

In the construction of wills the prime object is to ascertain and enforce the true intent and meaning of the testator (Snorgrass v. Thomas, 166 Mo. App. 1. c. 609, and cases cited), and when the language of the will is of doubtful meaning "the true intent and meaning of the testator can be best ascertained by the courts and those concerned in the execution of the will by putting themselves, so far as may be, in the place of the testator and reading all his directions therein contained in the light of his environment at the time it was made." [Murphy v. Carlin, supra.]

If it may be said that the present will is of doubtful meaning, we think the explanatory evidence should be restricted to the portrayal of the environment of the testator and his feelings towards the persons affected, and should not include declarations he may have

made concerning his interpretation of words employed in the will at his direction. Such declarations would be violative of the rule that "a testator's meaning is to be found in his will alone." A formal will would be of little practical value if it could be contradicted, varied or explained by proof of such declarations of the testator.

Passing to the subject of the interpretation of the will, the important question is whether it bespeaks an intent to impose an imperative obligation upon the devisee to regard herself as a trustee of a trust created for the equal benefit of the son and granddaughter of the testator, or an intent that the devisee should become the absolute owner of the estate with only a moral and not a legal obligation resting upon her to deal properly with the son and granddaughter.

In support of her position that a trust was created, we are cited by plaintiff to the cases of Schmucker's Estate v. Reel, 61 Mo. 592, and Noe v. Kern, 93 Mo. 367. In the first case the will contained a bequest to R. "to apply in charity according to his best discretion and I appoint said R. executor of this my will . . . and whereas I hope that R. will consent to act as my executor and desire to save him all trouble and annoyance in that regard and have every confidence, good faith and discretion, and have explained to him to what charities I desire him to appropriate the monies herein bequeathed to him, it is my will that my said executor be held to no accountability whatever for the nonperformance of the trust herein confided to him; he will use his best discretion in the matter and the receipt of the acting Archbishop of St. Louis of the Roman Catholic Church in Missouri or Kansas, shall be a full discharge to him pro tanto for any monies applied by him to charities according to my request."

The court said: "There is no mistaking the purport of this language. It all goes to show that the executor took bequests clothed with a trust to carry

out certain objects or purposes not defined or expressed in the will.''

Strictly speaking the trust in that case did not arise by implication from the use of precatory words. The purpose of creating a trust was clearly expressed and an unequivocal command was laid upon the legatee to devote the legacy to charity and not to any other use and the discretion allowed him was not a discretion to divert the legacy to any other use. In the opinion the court says of that species of implied trusts known to equity as precatory:

· ''Courts of equity have frequently discussed the question as to the force of words or expressions of recommendation in wills in regard to the use to which the testators might desire the persons to whom they had given legacies to put the same. The prevailing doctrine is, that no particular form of expression is requisite in order to create a binding and valid trust; and that words of recommendation, request, entreaty, wish or expectation, will impose a binding duty upon the devisee by way of trust, provided the testator has pointed out with sufficient clearness and certainty both the subject-matter and the object of the trust. · [Peeves v. Baker, 18 Beav. 372 Macnab v. Whitbrad, 17 Beav. 299; Jarn. Wills, 336; 2 Redf. Wills (2 Ed.) 410.]''

In Noe v. Kern, supra, the following bequest was in issue: ''I give, devise and bequeath unto my husband . . . all of my real and personal estate absolutely, the real estate being mostly situate in the city of Norfolk, State of Virginia. I make this bequest in the full faith that my husband will properly provide for the two children of my deceased brother, Simeon, whom we have undertaken to raise and educate.''

This language was held to create a precatory trust in favor of the children, not on the ground that the words themselves were prima facie sufficient to convert a devise or bequest into a trust but that the words

read in the light of evidence portraying the environment of the testatrix and her feelings towards the persons mentioned in the will were strong and convincing evidence of an intent that the precatory language she employed should be understood as voicing a command to do the thing she expressed the hope would be done.

The court seemed to recognize the injustice that might result from giving words of recommendation, request, entreaty, wish or expectation addressed to a legatee or devisee, the fixed, technical meaning of creating a trust and gave approval to the doctrine that "every case must depend upon the construction of the particular will under consideration. The point really to be determined in all these cases is whether, looking at the whole context of the will, the testator intended to impose an obligation on his legatee to carry his wishes into effect or whether, having expressed his wishes, he intended to leave it to the legatee to act on them or not at his discretion." [Perry on Trusts (3 Ed.), sec. 114.]

The whole doctrine of precatory trusts has been criticised as being purely artificial, as involving the solecism of reading an imperative command into words of mere recommendation accompanying an absolute devise or bequest. It was well said in Sale v. Moore, 1 Simons, 534, "that the first case that construed words of recommendation into a command made a will for the testator; for everyone knows the distinction between them." Van Duyne v. Van Duyne, 14 N. J. Eq., 1. c. 401.] The tendency of modern decisions both in England and America is to avoid such artificial canons of construction and to have regard only to the intention of the testator as gathered from the whole will in determining whether or not such expressions shall create a trust. [Corby v. Corby, 85 Mo. 1. c. 393.] "Judges have for some time past shown a decided leaning against the doctrine of precatory trusts and a strong tendency to restrict its operation within reason-

able and somewhat narrow bounds; many of the earlier decisions certainly would not be followed at the present day. The courts of this country have generally adopted the doctrine substantially as settled in England, although, perhaps, with some caution and reserve and they all exhibit the modern tendency to limit rather than enlarge its scope." [Pomeroy's Eq. Juris. (3 Ed.), secs. 1014, 1015.]

While, as we have shown, the doctrine is recognized in this State, the modern view that it should serve only as an aid to the ascertainment of the real intention of the testator also obtains. A clear and terse statement of the doctrine is to be found in the following quotation from Corby v. Corby, supra: "A precatory trust is not to be inferred from expressions of confidence or desire on the part of the testator contained in the will regarding the use to be made of the property devised or bequeathed, unless it fairly appears from the will that the testator contemplated and intended to create such trust and especially no such trust will be implied when it clearly appears that the testator intended to give the devisee full discretion in the use of the property." Where a devise or bequest is absolute it should not be cut down or lessened by mere words of recommendation unless the will, as a whole, clearly shows the testator had in mind the creation of a trust, and not a mere appeal to the discretion of the legatee. [See In re McVeigh's Estate, 164 S. W. 673, where the subject of precatory trusts is extensively and logically discussed by ALLEN, J.]

The most concise and perhaps the most luminous construction of precatory words in the reported cases is found in Fox v. Fox, 27 Beavan, 301, where the bequest was to the wife of the testator "to and for her own use and benefit absolutely having full confidence in her sufficient and judicious provision for my dear chil-

dren.'' The laconic opinion of the Master of the Rolls was as follows:

''I am clear that no precatory trust arises in this case; it is not, however, necessary to go through the authorities, which are not all perfectly reconcilable, but they all establish that the subject-matter must be certain, and the objects to take must be clearly defined.

''Here the testator intends to give his property absolutely to his wife, and he intended, at the same time, to give her a clear intimation of his wishes, but as to which she was to be considered under a moral, and not under any legal obligation.''

In the present case we cannot regard the words of recommendation in any other light than as an intimation of the wishes of the testator and not as a command. He intended to give his wife the absolute right to use, enjoy and dispose of the property without restriction or limitation. His son and granddaughter were adults, in no manner dependent upon him, as were the children in the case of Noe v. Kern, supra, and there is nothing in the record to suggest that he intended to make his wife a mere trustee for their benefit. We conclude that the trial judge took a proper view of the case. The judgment is affirmed.

All concur.