EMILY SIMPSON, Respondent, v. CHARLES G. CORDER, Appellant.

St. Louis Court of Appeals.    Argued and Submitted October 5, 1914.    Opinion Filed November 3, 1914.

1. WILLS: Construction: Persons and Property Subject to Trust. A devise of real estate upon the promise of the devisee to take care of and provide for testator's half-sister during the rest of her natural life and to defray all expenses of her last sickness and her burial, imposed a trust, not only upon the devisee personally, but also upon the property devised, which followed the property and remained on it during the life of the half-sister.

2. ———: ———: "Precatory Trust." A "precatory trust" is a trust created by certain words which are more like words of entreaty and permission than of command or certainty.

3. ———: Rules for Construction. In the construction of a will, the court should seek the intention of the testator, by looking

at the will in the light of all the circumstances under which it was executed and the condition of the parties.

4. ————: **Trust for Maintenance:** Commutation into Money Value. Under a will which contained a devise of real estate upon the devisee's promise to take care of and provide for testator's half-sister during the rest of her natural life and to defray all expenses of her last sickness and her burial, *held* that the half-sister, after testator's death, was entitled to support and treatment from the devisee, as one of the family, and, while she was under no obligation to remain a member of the devisee's household, if ill treated, yet, upon her leaving voluntarily and without justification, she was not entitled to an award of a sum in gross, as compensation for future care and support and for anticipated expenses of her last sickness and her burial.

Appeal from Washington Circuit Court.—*Hon. E. M. Dearing,* Judge.

AFFIRMED IN PART; REVERSED AND REMANDED (*with directions*) IN PART.

*Irwin & Nipper* for appellant.

*Charles H. Richeson* and *W. A. Cooper* for respondent.

(1) A will must be construed according to the true intention of the testator, and that intention must be gathered from within the four corners of the will and not from extrinsic evidence or testimony. Cross v. Hoch, 149 Mo. 325; Stewart v. Jones, 219 Mo. 614; Mead v. Jennings, 46 Mo. 91; Bakart v. Barkart, 86 Mo. App. 83; Murphy v. Carlin, 113 Mo. 112. (2) When courts of equity determine by decree, that a trust is created by the terms and provisions of a will, they will afford relief by inforcing the execution of the trust. Murphy v. Carlin, 113 Mo. 112; Bakart v. Bakart, 86 Mo. App. 83; Schmucker's Estate v. Reel, 61 Mo. 592; Noe v. Kern, 93 Mo. 373; Brook v. Eskins, 24 Mo. App. 297; 30 Am. & Eng. Ency. of Law, 798;

Note 2.    (3)  A court of equity having jurisdiction
for one purpose will retain it for all puropses and do
complete justice between the parties.   Keeton et al.
v. Spradling et al., 13 Mo. 321; McDaniel et al. v. Lee
et al., 37 Mo. 204; Holland v. Anderson et al., 38 Mo.
55; McCollum v. Boughton, 132 Mo. 601; Byers v.
Weeks, 105 Mo. App. 72.    (4)  The petition states a
good cause of action, yet in an action in equity a de-
murrer to the petition should not be sustained, if plain-
tiff is entitled to any relief whatever on the case stated
in the petition.   Tanner v. Railroad, 180 Mo. 1; Saline
County v. Sappington et al., 64 Mo. 72; McGlothlin,
Adm'r, et al. v. Hemery et al., 44 Mo. 350.

REYNOLDS, P. J.—This is a suit to construe the
will of one Oscar Simpson, deceased.   It is charged
that defendant Corder has wholly neglected and re-
fused to care for, support and maintain plaintiff and
still refuses to care for, support and maintain her,
as provided under the terms of the will and that plain-
tiff is entitled to an annuity in the sum of $240 per
annum, or the gross sum of $1142.40, for her interest
in the estate, "as under the table of mortality is made
and provided. "  "Wherefore plaintiff prays the judg-
ment of this court construing said last will and testa-
ment, and for a judgment and decree against this de-
fendant in the sum of $1142.40, as for the value of the
interests of said plaintiff in the lands in said will de-
scribed."

The answer, prefaced with a demurrer to the peti-
tion on the ground that it does not state facts suffi-
cient to constitute a cause of action, admits that Oscar
Simpson died, as stated, in February, 1908, leaving the
will set out in the petition and that it was duly ad-
mitted to probate on the 29th day of February, 1908,
but denies every other allegation in the petition.

The will referred to sets out that the testator, a
bachelor, residing in Concord township, Washington

county, Missouri, being of sound mind, etc., revoking all former wills, publishes this as his last will and testament. After expressing the desire that all of his just debts be paid, he gives and bequeaths to his half sister, Emily Simpson (plaintiff here), all his household goods and effects. The third clause is as follows: 'I give and bequeath to my friend Charles Corder (defendant), who has lived with me from childhood, my farm of 129.50 acres (describing it), together with all my live stock, farming implements and other chattels not heretofore disposed of. This bequest is made in consideration of the services the said Charles Corder has rendered me in the past and upon his promise to take care of and provide for my half sister, Emily Simpson (plaintiff), during the rest of her natural life, and defraying all expenses of her last sickness and proper burial.''

The fourth clause appoints Charles Corder executor, waiving bond.

The trial was to the court, as in equity.

At the conclusion of the evidence, the court, setting out the will and finding it had been probated found, adjudged and decreed that by the terms of the will, in so far as it relates to the interest of plaintiff, plaintiff took title absolute to all household goods and effects belonging to testator at his death; that under the third clause of the will defendant took a fee in the real estate, describing it, "subject to and charged with the equitable lien of Emily Simpson, plaintiff herein, for her care, support and maintenance during her natural life and for defraying the expenses of her last sickness and proper burial." It further found that the present gross value of the real estate is $1800 and that the present gross value of the life estate of Emily Simpson in the above described real estate, in the form of an annuity is $476.22, "as is provided for in section 8499, Revised Statutes 1909, and according to the Car-

lisle tables of mortality. And the court doth further find that the probable cost and expenses of defraying the last sickness and proper burial of Emily Simpson to be $100. It is therefore ordered, adjudged and decreed by the court that the plaintiff, Emily Simpson, have judgment against the defendant, Charles G. Corder, for the sum of $576.22, with interest at the rate of six per cent per annum, dating from the 19th day of June, 1913, the date of the filing of the petition herein, together with all her costs in this behalf expended, and that execution issue therefor.''

Interposing a motion for new trial as well as one in arrest of judgment and excepting to the action of the court in overruling these motions, defendant perfected his appeal to this court.

That under the terms of the will of Oscar Simpson, plaintiff took title to the personal property, that is to say the household goods and effects, is clear. That defendant took the real estate described, together with the live stock, farming implements and other chattels not otherwise disposed of by the will, charged with the trust in favor of Emily Simpson, is equally clear. The bequest, as it is called, obviously not using that word in its technical sense, for there is not only a bequest of personalty but a devise of realty, is recited to be in consideration of the services Charles G. Corder had rendered the testator in the past, ''and upon his promise to take care of and provide for my half sister, Emily Simpson, during the rest of her natural life, and defraying all expenses of her last sickness and proper burial.'' This was a trust imposed not only upon Corder personally, but also upon the property, which followed the property and remained on it during the life of Emily Simpson.

A precatory trust is defined to be ''a trust created by certain words, which are more like words of entreaty and permission than of command or certainty.'' [Black, Law Dictionary (2 Ed.).] The words

here used are not mere words of entreaty or permission but are in the nature of a positive command—in fact the devise is made, in part, upon the promise of the devisee and legatee that he would take care of, etc., the plaintiff. They are "a condition for the benefit of a person, without any expressed indication that its breach .shall work a forfeiture of the estate, (and) should be regarded as creating a trust or charge upon the land in such person's favor, to be enforced as other trusts and charges, and not as a limitation upon the estate devised." [30 Am. & Eng. Ency. (2 Ed.), p. 798.]

The question as to whether words used are to be considered as creating precatory trusts has been before our courts in many cases. As see In the matter of Schmucker's Estate v. Reel, 61 Mo. 592; Noe v. Kern, 93 Mo. 367, 6 S. W. 239; Murphy v. Carlin, 113 Mo. 112, 20 S. W. 786; Cross v. Hoch, 149 Mo.. 325, 50 S. W. 786; Stewart v. Jones, 219 Mo. 615, 118 S.. W. 1. In these cases it was held that such trusts were created.

In re McVeigh's Estate, 181 Mo. App. 566, 164 S. W. 673, and Snyder v. Toler, 179 Mo. App. 376, 166 S. W. 1059, the words used were held not to create such a trust. These two cases last cited discuss the matter so fully that it is not necessary to go into this branch of the subject any further, it being sufficient to say that the words here used clearly imposed a trust upon the property, charging it with the amount necessary "to take care of and provide for . . . Emily Simpson, during the rest of her natural life, and defraying all expenses of her last sickness and proper burial."

So far, therefore, the action of the trial court in holding this to be a trust upon the property in the hands of defendant is correct.

But when we come to consider the action of the learned trial judge in awarding a sum in gross, apparently in commutation of the present worth of the life estate of plaintiff in this land, we are unable to

agree with his conclusion. In the first place the sum allowed strikes us as grossly in excess of the value of the property. The testator, according to the undisputed testimony, paid $900 for this property. The witnesses permitted to testify as to its value put it at from twelve to eighteen hundred dollars. When defendant went into possession, only about twenty acres were in cultivation, and he put in about six acres more. We do not think that the evidence warrants a valuation of $1800.

But we do not think that the value of this property was to be considered here. Plaintiff is entitled to her support, etc., and to look to the property in whosoever's hands it may be, but that is all. The value of the property was of no moment. We know of no rule or principle upon which the chancellor was justified in awarding the present worth of plaintiff's interest as he did. Looking at this will in the light of all the circumstances under which it was executed and the condition of the parties, which is the rule of construction indicated in all cases, and especially so in the ones we have cited above, the intention of the testator is to be sought. As is said in many cases, the court is to put itself as near as possible in the situation of the testator at the time of making his will and so endeavor to arrive at the true intent and meaning of the will, as that intention is expressed. Here was an old man and his sister who had been living together for some twenty-five years, and who had taken defendant into their household, he then an infant eight or nine years old, and raised him as their son. The brother and sister, well advanced in years, the latter seventy-five years of age at the time of this trial, the brother apparently about the same age, when he made the will, had been living together as one household and this defendant had lived with them and been reared by them as a son. The testator was a small farmer, hardly to be considered even well to do. The family lived modestly, as

did their neighbors. It is very obvious, considering the circumstances and the language of the will itself, that it was in the mind of the testator that on his death the same family relation should continue as had existed prior thereto; that is to say, that his sister should receive the same care and attention and be provided for by this defendant on the death of the testator as she had previously been provided for by the testator in his lifetime, and this was to continue during her life; and it was on condition, or on the promise, that he would do so, that the testator specifically states that he had made the devise and bequest to this defendant. As long as she continued to remain in the household, residing with defendant after the death of her brother, she was entitled to the same support and treatment as one of the family as she had theretofore received, and no more.

Noe v. Kern, 93 Mo. 367, 6 S. W. 239, is an exceptional case in so far as concerns the amount awarded, as well as in other particulars. The court construing the will in connection with the relation of the children to the testatrix, really construed it as in a sense adopting the children, the proper provision for the children of the deceased brother and which she and her husband had undertaken to make towards raising and educating them being construed by our Supreme Court to mean that it was the intention of the testatrix that they should be raised and educated in accordance with the usual requirements "of the circle in society in which they moved," hence the approval of the large sum awarded. Very much the same view was taken in Murphy v. Carlin, 113 Mo. 112, 20 S. W. 786.

But plaintiff was under no obligation to remain there if ill treated. According to her own testimony in the case, there is no evidence whatever of any ill treatment or failure of support on the part of defendant. Some outsiders, it is true, testified to one instance in which it is alleged that defendant slapped

plaintiff in the face and left a mark or bruise on her face, and called her a vile name, but this apparently occurred more than a year before plaintiff left the premises and home of defendant. It is difficult to believe that the cause of her leaving is to be traced back to this. It is to be noted that in her own testimony plaintiff makes no reference to any acts that constitute ill treatment or abuse.

In the light of the evidence in the case, we are unable to find any fact justifying plaintiff in leaving defendant's home. If she did so voluntarily and took up a residence elsewhere, it is exceedingly doubtful whether defendant can be compelled to pay for her board and keep. That we do not here decide. If it appeared here, or if it afterwards appears, that defendant refused support to plaintiff, or by his conduct forced her to leave the home, we may have a different case. We are compelled to hold, in the light of the testimony, that plaintiff has not made out a case showing that she had been driven from the home, or that defendant had refused, on any request made by her, to care for or support her. To allow the award of the sum in gross, that is to say, make a computation of the present worth of plaintiff's life estate in this property and allow her that, as was done, might be to defeat the very object of the testator. He was providing for the support and for a home for his sister during her life, attention during her last sickness, and for her decent burial. If this sum is paid to her in gross, as under the award of the court it would have to be, and she should spend it and be reduced to poverty, who is to look after her declining years, support her, look after her in her last sickness, and bury her? Under this decree that would all have been paid for and the property discharged from the trust and the defendant freed from any obligation to make further payment. Thus the very object of the testator in providing for the declining years of his sister would be

defeated. Or, take it another way: If, within a year or two after receiving this money, plaintiff should die, leaving any part of it unexpended over and above the expenses of her last sickness and her funeral expenses, to whom would it go? Obviously, if distributed among her next of kin, or legatees, it would be contrary to the intention of the testator in providing for his sister by his will. In no event, therefore can this decree of the court in awarding the sum in gross be sustained.

In Bakert v. Bakert, 86 Mo. App. 83, the Kansas City Court of Appeals had to deal with a case presenting some of the features common to this and found on the evidence that the necessary sum required to support the plaintiff was $150 as a fair and proper sum for the annual charge for that purpose. It did not undertake to compute the present worth of the annuity, based on the life expectancy of the beneficiary.

A case somewhat like the one at bar was presented to the Supreme Judicial Court of Massachusetts in Sheldon v. Purple, 15 Pick. (Mass.) 528. This latter action, however, was an action at law, in assumpsit, to recover from the grantee of the real estate upon which the trust had been imposed a sum of money sufficient for the support of plaintiff for a certain period of time. The plaintiff was permitted to recover.

We are compelled, therefore, to hold that under the facts presented by this record, plaintiff cannot recover in this action and on the facts in evidence a sum in gross as compensation for future care and support and for anticipated expenses of her last sickness and for her burial; nor has she made out a case of failure of support in the past.

The judgment of the circuit court is affirmed as to the construction of the will, but is reversed in all other particulars, and the cause is remanded with directions to that court to enter up a decree construing the will,

as herein indicated, but dismissing plaintiff's cause as to so much of her petition as seeks a decree awarding her a sum in gross as prayed, but without prejudice as to her right to hereafter sue for care and support, if these are denied. The proper sum to be awarded for care in her last illness and for her burial cannot be determined in advance of those events. *Nortoni* and *Allen, JJ.,* concur.