J. B. SMOOT, Executor of the Estate of ELIZABETH M. ANDERSON, Deceased, v. W. A. HARBUR, P. A. HARBUR, C. R. HARBUR, E. E. HARBUR, W. E. HARBUR, J. E. HARBUR, ELLIS HARBUR, ADA DEAN, ELSIE WELBURN, BURLA BOOKER, C. VANCE BRADLEY, HELEN BRADLEY, WILLIAM T. HUNTER, GRACE HUNTER, MILDRED RHODES and ELLIS HARBUR, Defendants, BURLA BOOKER, Appellant.—No. 40682.—209 S. W. (2d) 249.

Court en Banc, March 8, 1948.

*Hudson V. Smoot* and *Reudlen, White & Reudlen* for appellant.

512

*G. R. Breidenstein* for respondents.

[250] HYDE, J.—This is an action to construe a will. The construction of the trial court was affirmed by the St. Louis Court of Appeals. [Smoot v. Harbur, 203 S. W. (2d) 890.] We transferred it here upon appellant's claim that the opinion of the Court of Appeals was in conflict with our opinion in Meiners v. Meiners, 179 Mo. 614, 78 S. W. 795. We refer to the opinion of the Court of Appeals for the pleadings.

The question for decision is whether the will gives appellant a one-fourth or one-eighth share as residuary legatee. If she has only

a one-eighth then testatrix died ·intestate as to one-eighth of her · residuary estate. The trial court and, the Court of Appeals decided that appellant's. share .was only one-eighth. ·

Testatrix obtained a printed blank form for a will from the Probate Judge and apparently copied (with a typewriter) parts of a previous will, executed by her, which from its wording must have been· prepared by a lawyer. Articles 1, 2, 3 and 5 of her last will appear as follows:

## Last Will and Testament

(R. S. 1929, Secs. 517 51S.)

J............Elizabeth. M. .Anderson.................................of the...............City................. of............Memphis.......................in the County of......... ........Scotland...................and State of ...........Missouri........................being of sound and disposing mind, do make, publish and declare this my **Last Will and Testament** hereby revoking all wills by me heretofore made.

Article 1. I direct that all my just debts and funeral expenses be paid as soon as practicable after my decease.

Article 2. I give,devise and.bequeth unto my Friend Dr W.S.Petty, of Lincoln Neb. My entire interest in the Anderson Cabinet and Register Co Patent on Cabinet and Business .

Articlw 3. I give,devise and bequeth all of the rest and residue of my property real personel ans mixed, in the following shares and to the following named persons. to -wit; One fourth thereof, individually. one-eighth thereof to my niexe, Burla Booker of Galesburg Illinois. one-eighth mr and Mrs William T.Hunter Ann Arbor Michigan two -eighth to Mr and Mrs C.Vance Bradley of·Keokuk Iowa. two eighth to my Niece Mildred Rhodes of Ottamwa Iowa.In the event that any of the above named legatees should predecease me, then it is my will, and I hereby devise and bequeththe interestor interests,of such diseased person,or persons, to the remaining legatees,enumerated above in this article,who survive me,in the respective shares or in the articles,who survive me in their respective shares or interests hereinabove stated.

article 5: It is my will that my Brothers and Sisters.W.A.Harbur. P. A.Harbur,J.E.Harbur. C.R.Harbur.E.E.Harbur, W.E.Harbur, Ellis Harbur. Ada Dean.and Elsie Welburm, Receve nothing from my Estate.I mention the names of my Brothers and Siaters to show that I have not forgotten them, and I ppurposely exclude them from my interest in my estate.

[251] There was no Article 4 in her last will, apparently due to the fact that an article of the previous will (Article 3 therein) dis-

posing of certain furniture, linen, bedding and dishes was not included in her last will. The rest of her last will (Articles 5 and 6) were copied almost exactly (except for punctuation and spelling) as they were in the previous will. Article 6, which was partly on the second page of the will, was as follows:

"Article 6.: I nominate and appoint J. B. Smoot of Memphis Missouri, to be the executor of my last will and testament. I give to my said Executor full power and authority to sell and convey any and all of my realestate, at such timesand for such reasonable prices as he shall deam best, without the order of power of the probate court; and after one year from the date of my death, if any property remains disposed of, I direct my said executor to sell all of my propertyremaining and undisposed of at thetime, real, personal, and mixed. according to his best judgment. and for the prices which he shall determine to be reasonable; my said Executor shall collect the proceedsof all such sales and shall devide the s/a/l/e/ the same according to the interests above enumerated and to the above named persons in article 4 of this will." (Actually the residuary article was article 3.)

If this will is construed to give appellant only one-eighth, then nine-tenth of the remaining one-eighth would go to the nine brothers and sisters named in article 5, whom testatrix stated therein were to receive nothing from her estate. The other one-tenth thereof would go to appellant and her brother who were the surviving children of a deceased brother of the testatrix. Appellant contends that the whole instrument clearly evidences testatrix's intent to dispose of her entire estate and that repugnant or inconsistent clauses should be harmonized so that her real intent will prevail. It is pointed out: "Testatrix says in Article 3 she intended to and was giving 'all of the rest and residue of my property.' In Article 5 she stated she did not want her named next of kin to have any part of her property. By Article 6 her executor was to sell all of her property and divide the same according to the interests enumerated in the will," and to the persons named in the residuary clause. The position of the other defendants, as stated by the Court of Appeals, is: "It is true that immediately preceding the words 'one-eighth thereof to my niece, Burla Booker of Galesburg, Illinois,' appear the words 'One-fourth thereof, individually.' However, the last quoted words do not name or point out who is to receive 'One-fourth thereof, individually.' Whereas the words immediately following said words do definitely, positively and unambiguously declare that 'one-eighth' of said residue is to go to 'my niece, Burla Booker of Galesburg, Illinois.' The two words 'one-eighth', describing the part of the residue that is to go to Burla Booker, are plain, simple and certain. They are open to but one meaning. They mean exactly what they say—'one-eighth'. No amount of 'construction' or 'interpretation' or 'extrinsic evidence' can change 'one-eighth' into 'one-fourth'." (203 S. W. (2d) l. c.

892.) While the question is a close one, nevertheless, considering the will as a whole and the way it was written, we feel compelled to reach a different conclusion as to its construction.

In the Meiners case, the testator left bequests of money to three of his sons and to others and then provided: "I will, give, bequeath and devise to my sons, John, Herman Jr., and Aloysuis, the undivided one-third in all my real estate." It was contended that these three sons received one-third of the real estate jointly and that the testator died intestate as to the other two-thirds. This court said: "Words in a will must be given their ordinary meaning and grammatical construction, unless it is manifest from the whole instrument that they were used in a different sense; and this leads to the further proposition that the intent is to be gathered from the whole instrument, so that if a literal construction of a particular clause would render it a discord in the whole will, we should not give it that construction if it is reasonably susceptible of another that would bring it into harmony. . . . When a man makes a will that is fairly susceptible of being construed into a testamentary disposal of his whole [252] estate it will be so construed in preference to construing it to be a case of partial intestacy."

This court considered therein the fact that "this will was written at the dictation of the testator whose native language was German" and said: "If we should cut this clause out of the body of the will and read it alone we would hold that the plaintiff's interpretation of it was correct. But we have no right to do that; we must consider the purpose of the testator which runs through the will from its beginning to the end." Therefore, this court's conclusion was: "All the clauses, both those preceding and those following the fourth clause, indicate that the testator understood that his whole estate was covered by his will. When he said that those three sons were to have an undivided third of his real estate he meant that each was to have an undivided third. Any other construction would upset the whole plan of the will and defeat the testator's intention." [See also Mudd v. Cunningham, (Mo. Sup.), 181 S. W. 386 and cases therein cited; note 14 Mo. B. L. 36; Wiechert v. Wiechert, 317 Mo. 118, 294 S. W. 721; Annotation 94 A. L. R. 26.]

It seems evident that testatrix here intended to dispose of all of her property by her last will; and, after the specific bequest in Article 2, intended to dispose of her remaining property by the residuary clause thereof. The previous will did do so and the residuary article (Article 4 thereof) throws some light on the matter by showing the origin of the language used in her last will. It began as follows: "I give, devise and bequeath all of the rest and residue of my property, real, personal and mixed, in the following shares and to the following named persons, to-wit: One-fourth thereof, jointly, to Forrest Francis and Mable Francis, husband and wife, of West Baden, Indiana; *one-fourth thereof, individually,* to Mary Jane Mc-

Daniel, (daughter of Earl McDaniel), of West Palm Beach, Florida; one-eighth thereof to my niece, Burla Booker, of Galesburg, Illinois; one-eighth thereof to my nephew, Ellis Harbur, of Peoria, Illinois; one-eighth thereof to C. Vance Bradley, of Keokuk, Iowa; one-eighth thereof to Mrs. Mildred Rhodes of Ottumwa, Iowa, niece." The last sentence of the residuary article was the same in both wills.

In her last will, testatrix started to set out the portions to be given to each person by beginning with the words we have italicised but did not copy the name of Mary Jane McDaniel, as in the previous will, or write any other name immediately after them. Apparently she then copied the part giving one-eighth to Burla Booker and one-eighth to some other person whose name seems to have been obliterated but that portion was changed with a pen to two-eighths. An inspection of the original will (which we ordered sent here) shows that the names of Mr. and Mrs. William T. Hunter were written on a separate piece of paper and pasted over some other name or in space left for a name. The last two beneficiaries named were the same as in the previous will but the share of each was written "two-eighth" instead of one-eighth. Thus, if the words "one-fourth thereof, individually" be disregarded, her last will did not dispose of all of her residuary estate either as originally written or as changed with a pen to give two-eighths to the Hunters.

As stated in the Meiners case "in order to deprive the heir of his inheritance, it must not only appear from the will that the testator did not intend him to take any portion of the estate, or that he intended him to take only a specified portion, but the will must also give the property to some one else." However, both the words "one-fourth thereof" and "one-eighth thereof" appear before the name of appellant. Without punctuation this clause would read "one-fourth thereof individually one-eighth thereof to my niece Burla Booker." Certainly that is an ambiguous clause, and raises the question: Did the testatrix intend to give appellant one-fourth or one-eighth? Both are specified but in order to dispose of all her property, it was necessary for testatrix to give her one-fourth. It is true that a period appears after the word "individually" but we do not think this case should be decided on the basis of punctuation. On that basis, it could be argued that Article 2 did not give anything to anyone because a period appears [253] after the words "I give, devise and bequeath unto my Friend Dr. W. S. Petty, of Lincoln, Neb." and thereafter, spaced as a new sentence with the first word beginning with a capital letter, appears: "My entire interest in the Anderson Cabinet etc." On the basis of such punctuation, spacing, and capitalization, these could be construed as two incomplete sentences, one failing to describe any property and the other failing to name anyone, and, therefore, ineffective to dispose of the

property described; but we do not think that would be a reasonable construction.

Certainly testatrix's whole will does show a clear intention to dispose of all of her property and not to leave any of it to go under the statute of descents. Article 5 emphatically states that she does not want her nine brothers and sisters, who would take under the statute, to have any part of her property. Article 6 manifests the belief that disposition has been made of all of it. The words "one-fourth thereof" were put in the will for some purpose. Considering the will as a whole, we think it is more reasonable to construe the residuary article as making those words applicable to appellant's share·than to construe it as applying thereto the words "one-eighth thereof." Testatrix was changing both the beneficiaries and the shares given them when she was copying her previous will. Copying·it on the typewriter seems to have been a difficult task for her, or whoever did it if she did not. It will be noted that periods are used in other places in this article where commas should have been used. (See also Article 5 and last part of Article 6.) From her whole will it seems reasonable to believe that she intended to divide her·residuary estate into four parts. Perhaps in writing the part describing one-eighth shares she may have been following the language of the previous will, instead of her then present intention, because she changed the second one to two-eighths. Perhaps she did not change, or even notice, the first one because of the words "one-fourth thereof" before it. In any event, we believe her entire will so clearly shows the intention of disposing of all her property that we must hold that it gives appellant one-fourth of her residuary estate. Therefore, as we said in the Wiechert case (317 Mo. 1. c. 122) "That the erroneous part of the description may be thus rejected and the good part used, is established not only by the cases cited, but by law anciently crystallized in the maxim *Falsa demonstratio non nocet*, etc."

The opinion of the Court of Appeals is quashed, the judgment is reversed and the cause remanded with directions to enter a judgment so construing the will. All concur