Julia **GEHRING**, as Administratrix with Will Annexed, of Louise G. Raindge, deceased, and Julia Gehring, Katherine Gehring and Carrie Hardin, Respondents,

v.

Arthur **HENRY** and Claude Henry, Appellants.

No. 47703.

Supreme Court of Missouri,

Division No. 2.

March 14, 1960.

Hunter, Chamier & Motley, Moberly, Tom B. Brown, Jr., Edina, for appellants.

Austin Walden, Moberly, for respondents.

EAGER, Judge.

In this declaratory judgment suit plaintiffs sought the construction of a will and codicil executed by Henry Raindge and his wife, Louise. Apparently Henry had drawn the will himself, and the case is a shining example of the confusion and litigation which often results in such instances. The sisters of the wife, joined by her Administratrix with the will annexed, are plaintiffs; defendants are the surviving nephews of Henry. The decedents left no surviving children. Most of the material facts were stipulated. The will was executed on January 1, 1948, and the codicil on July 6, 1952. Henry died on November 3, 1953, and the will was admitted to probate as his will shortly thereafter. Louise, the wife, was declared insane on December 23, 1953, and she remained under guardianship until her death. Henry's estate was fully probated and all the property was delivered to the guardian of Louise, by order of the Probate Court of Randolph County. Upon her death on July 23, 1958, the will was again probated as her will, the guardianship accounts were settled, and the assets were turned over to the Administratrix of Louise. All the property belonged to Henry, the husband, at the time of the execution of the will and until his death. The value of the property in Louise's estate is approximately $12,500.

The will, purporting to be "our joint will and testement," directed "First" that upon the death of Henry all real and personal property "owned and possed by him at the time of his death pass unconditionally to Louise G, Raindge, * * *." It provided, "Second" that upon the death of Louise all of her real and personal property "pass unconditionally to Henry Raindge." Article Third, constituting in large part the bone of contention here, was as follows: "If Henry Raindge dies before Louise G, Raindge then Louise G, Raindge is to become excutrix of this will, In case Louise G, Raindge before Henry Raindge, then Henry Raindge will be excutor of this will, In case Henry ·Raindge and/or Louise G, Raindge on or near the same date then Bert Henry of Greensburg Mo, to be the excutor of this will in case we the undersiners died on or near the same date all of the real and persnal property owened and by each and/or by both of us is to be divided equelly between, Bert Henry, Greensburg, Mo, Elmer Henry, Greensburg, Mo Arthor Henry, Greensburg, Mo Claud Henry, Greensburg, Mo, Herald Henry Greensburg, Mo, No bond required for this will, In witness whereof we have hereunto set our hands and seal 1st day of January 1948, A.D." The codicil recited that two of the five nephews had died and that the interests which they would have received should go to the three named survivors. After the execution and witnessing of the codicil and at some unspecified date, the following sentence was added thereto in the handwriting of Henry: "The Sisters of Louise G. Raindge will have no claim on estate at any time." This part was not admitted to probate in either proceeding.

One of the defendants was permitted to testify, over objection, that Henry had stated to him that he was going to make a will, that there was not enough for the whole family and that he would "like to make it to you two boys"; also, that he did not want his wife's sisters "to have a thing." The same witness also testified that Henry said on another occasion, "I'm going to fix it to you boys." The other defendant testified to the substance of the

same or similar conversations, one of which was supposedly after the execution of the will. Henry either had a somewhat erratic memory or he was not in close touch with the nephews, for it seems to be conceded that one of the five was dead when he was named in the original will, and another was dead when named as a surviving beneficiary in the codicil. One of the plaintiffs testified that their relations with Henry were very friendly. Shortly after Henry's death the widow moved in with one of her sisters and lived there until her death. The trial court found the facts largely as already outlined, found that a justiciable controversy existed, and further found that each of the spouses intended that upon his or her death the survivor should take the entire estate "absolutely and in fee simple," unless they should die "on or near the same time, in which event their estate should pass to defendants." Consequently, it was ordered that the property in the hands of Louise's Administratrix should be distributed in equal shares to her sisters and that defendants were entitled to no interest therein.

The parties here cite and discuss many principles of will construction which are more or less horn-book law, and about which there can be little or no question. It would be a work of supererogation to repeat and discuss all of these here. We shall mention only those which seem to us more or less decisive, or which need to be ruled out.

■ Much confusion exists concerning joint wills, mutual wills, and reciprocal wills. Indeed, it has been said that there is not only confusion about the law, but also about the very meaning of words used on the subject. Gill, Treatise on Real Property Law, 1949, Vol. III, p. 1317. The terms are defined, the subject is discussed, and the types differentiated at 97 C.J.S. Wills § 1364. All parties seem to agree here, however, that this will should be considered and construed as the will of the husband, since he admittedly owned all the property in his own right. There is some authority for this view. 57 Am.Jur. Wills, § 686, p. 463; Graham v. Graham, 297 Mo. 290, 249 S.W. 37; Moore v. Samuelson, 107 Kan. 744, 193 P. 369; In re Hansen's Estate, 87 Neb. 567, 127 N.W. 879; 169 A.L. R. p. 20, note. These authorities indicate that in such event the joinder of the wife is without legal significance. Construing the will in this light, as we are justified in doing in view of the briefs, the authorities, and the particular terms of this will, we are relieved of the necessity of classifying it further, and of attempting to pierce the confusion surrounding joint wills. Defendants insist that the wife's joinder demonstrated that she acquiesced in the husband's intent, but it will not be necessary to pursue that angle in view of our construction of the provisions of the will.

■ Of course, the intent of the testator, taken from the four corners of the instrument, is the "polestar" to be followed in construing a will. Boxley v. Easter, Mo., 319 S.W.2d 628, 632. But one is also presumed to know and intend the legal effect of language which he uses in a will. Thomas v. Higginbotham, Mo., 318 S.W.2d 234, 237; Vaughan v. Compton, Mo., 235 S.W.2d 328, 330. Parol testimony is sometimes admitted to resolve a latent ambiguity, as, for instance, concerning the identity of a beneficiary or of property conveyed (Evans v. Volunteers of America, Mo., 280 S.W.2d 1, 5; Winkel v. Streicher, 365 Mo. 1170, 295 S.W.2d .56, 58–59), or to show the testator's circumstances, the extent of his property, and his relationships. But parol evidence of a testator's intentions or of the meaning of provisions in his will, as shown by his own declarations, is not competent. See the cases last cited, and also: Wooley v. Hays, 285 Mo. 566, 226 S.W. 842, 844, 16 A.L.R. 1; Bernheimer v. First National Bank of Kansas City, 359 Mo. 1119, 225 S.W.2d 745, 749; Snyder v. Toler, 179 Mo.App. 376, 166 S.W. 1059. We find it unnecessary to decide whether any of the oral testimony here was com-

petent, for we find the terms of the will controlling.

We have determined that the first paragraph or article of the will bequeathing all of Henry's property "unconditionally to Louise G. Raindge" vested in her an estate in fee simple upon Henry's death. Defendants seem to admit in their answer that a fee simple estate was intended, but contend, in some manner not fully explained in answer or brief, that upon Louise's death without a will the property then "passed" to the defendant nephews. A fee simple estate granted by devise or bequest in a will, may not be cut down or limited by a subsequent ambiguous provision. Weller v. Searcy, 343 Mo. 768, 123 S.W.2d 73, 77; Bolte v. Bolte, 347 Mo. 281, 147 S.W.2d 441, 443; Vaughan v. Compton, Mo., 235 S.W.2d 328, 330; Schake v. Siem, Mo., 265 S.W.2d 338, 341. All admit here that the third article of the will is ambiguous. It is therefore ineffective to cut down the fee estate granted to Louise in the first article. If one has a fee, he may do with it what he desires (assuming competency); he may convey it, use it up or, dying intestate, let it pass by descent and distribution. Vaughan v. Compton, Mo., 235 S.W.2d 328, 330. The phrase "pass unconditionally to Louise * * *" is sufficient here to create a fee. See by analogy, Weller v. Searcy, 343 Mo. 768, 123 S.W.2d 73, 77; Thompson v. Smith, Mo., 300 S.W.2d 404; Bolte v. Bolte, 347 Mo. 281, 147 S.W.2d 441, 443; Section 474.480 RSMo 1949, V.A.M.S.; Schake v. Siem, Mo., 265 S.W.2d 338, 340–341; Housman v. Lewellen, 362 Mo. 759, 244 S.W.2d 21, 24; Bowles v. Shocklee, Mo., 276 S.W. 17.

We are urged, pro and con, to supply a period in Article Third in order to resolve the ambiguity and give it meaning; but the parties differ widely as to where the period should be placed. When it is necessary in order to make an ambiguous clause effective, the courts may supply, change, or disregard punctuation. Winkel

v. Streicher, Banc, 365 Mo. 1170, 295 S.W. 2d 56; Smoot v. Harbur, 357 Mo. 511, 209 S.W.2d 249; 57 Am.Jur. Wills, § 1155, p. 753; Lycan v. Miller, 112 Mo. 548, 20 S.W. 36; Palmer v. Crews, 203 Miss. 806, 35 So. 2d 430, 4 A.L.R.2d 483; In re Estate of Gerdes, 245 Iowa 778, 62 N.W.2d 777. This is done, however, as a part of the basic problem of determining the testator's real intent. Certainly the punctuation used by this testator may not be taken as a reliable guide. As counsel for plaintiffs has said at one point: "Admittedly, testator took a dim view of the rules of punctuation * * *." We have determined that it is more consistent with the intent expressed in the will itself (including the grant of a fee to Louise) to supply a period after the words "the executor of this will," and immediately before the words: "in case we the undersiners * * *." By so doing we give an operative effect to all clauses and words in the article. Mercantile-Commerce Bank & Trust Co. v. Binowitz, Mo.App., 238 S.W.2d 893; Cockrell v. First National Bank of Kansas City, 357 Mo. 894, 211 S.W.2d 475; Hunter v. Hunter, Mo., 320 S.W.2d 529. So interpreted, the preceding part of the article is concerned solely with the appointment of an executor or executrix; the remaining part then gives all property to the nephews in the event both spouses die "on or near the same date." This interpretation is more consistent with the bequest of a fee to Louise, for it imposes no substantial limitation thereon. If we insert the period twelve words later, and immediately before the phrase "all of the real and personal property," as defendants would have us do, the article would then provide for a disposition of all property to the nephews without providing when it shall so vest, and it is obvious that such a disposition would constitute a limitation on Louise's fee; in effect, it would convert the fee into a life estate, at most. Moreover, it would render the prior sentence repetitious by leaving therein the twice-stated phrase "on or near the same date,"—and as counsel states,—"in no other part of the will was he [testator] redun-

dant." We construe Article Third as bequeathing the property to defendants only in the event of a substantially simultaneous death. Since these parties died more than four years apart, the nephews take nothing.

■ This construction does not conflict in any way with the rule that a will is presumed to dispose of one's whole estate, and that a construction will be adopted, when possible, which will avoid partial intestacy. See: Lutheran Altenheim Society of Mo. v. Younghouse, 365 Mo. 39, 275 S.W.2d 361; Burrier v. Jones, 338 Mo. 679, 92 S.W.2d 885; Lang v. Estorge, Mo., 242 S.W.2d 50. This rule does not mean, as we interpret it, that one must make some other disposition of his property after he has once bequeathed it in fee. It is usually applied to eliminate a construction which would sustain a bequest of only a part or parts of one's total property, leaving some other portion wholly undisposed of, and subject to intestacy. The rule might also be applicable here if we construed the bequest to Louise as one for her life only. Considering this will as the will of Henry, as both parties urge us to do, we see that he most certainly did not die intestate as to any property. If we go further and regard this instrument as the wife's will also, then she fully disposed of any property she might have had in case she predeceased her husband. Under our construction she made no attempt to dispose of it in case she survived him, and she did not die partially intestate, but totally intestate.

■ We mention one or two other contentions, briefly. The sentence added by Henry after the codicil was executed to the effect that Louise's sisters should have "no claim," was obviously no part of the will, and it was never admitted to probate as such. It is, however, urged upon us as showing Henry's clear intent. This was not shown to have been his intent at the time the will (or codicil) was executed. We may not consider a testator's oral or written declarations aliunde as affecting or changing the intent which he has expressed in the written words of his will. Bernheimer v. First National Bank of Kansas City, 359 Mo. 1119, 225 S.W.2d 745, 749; Wooley v. Hays, 285 Mo. 566, 226 S.W. 842, 844, 16 A.L.R. 1; Lang v. Estorge, Mo., 242 S.W.2d 50. In the case last cited, the court said, loc. cit. 53: " 'It cannot be heard to show that he meant one thing when he said another or to show an intention not expressed in the will itself, or to aid in making a will. which the testator intended to make, but did not in fact make. However clearly an intention not expressed in the will may be proved by extrinsic evidence, the rule of law requiring wills to be in writing stands as an insuperable barrier against carrying the intention thus proved into execution.' " And the testator is presumed to know and intend the legal effect of the language he uses. Thomas v. Higginbotham, Mo., 318 S.W.2d 234, 237. The added sentence can be of no aid here, and particularly is this true where only a clause sufficiently clear to cut down Louise's fee would be effective, even if it were incorporated into the will itself. If the testator here made mistakes in his will we cannot rewrite it.

■ It is also argued that if Louise did not acquiesce in the disposition of the property to the nephews, she could have drawn a new will. This argument assumes the ultimate fact that there was a disposition of the remainder interest to the nephews and of only some lesser estate to Louise. We have held otherwise. And, even on the facts, we could hardly hold that a woman, adjudicated insane on December 23, 1953, was bound by acquiescence for her failure to draw and execute a will after November 3, 1953.

We have thus disposed of the material contentions. We concur in the disposition made by the trial court and the judgment is affirmed.

LEEDY, P. J., STORCKMAN, J., and BROADDUS, Special Judge, concur.